## AFFIDAVIT OF PAUL SULLIVAN

**Paul Sullivan**, being duly sworn according to law, does hereby depose and state as follows:

1.      My name is Paul Sullivan, and I submit this affidavit in support of the opposition by JTR Enterprises LLC ("JTR") to the Motion for Sanctions filed by Motivation, Inc. ("Motivation") in Case No. 4:11-cv-10074-JLK, pending in the United Stated District Court for the Southern District of Florida (In Admiralty) (the "Admiralty Action"). I am an adult, of sound mind and body, and I make this affidavit based on my personal knowledge, except in such places where I note that my knowledge is based on information obtained from others.

2.      For over ten years I have been a personal friend of Scott Miscovich, who is the brother of Jay Miscovich ("Jay") – the founder and sole Managing Member of JTR, which is an entity that was formed for the purpose of commencing and pursuing the Admiralty Action in order to obtain title to and/or a liberal salvage award respecting a large quantity of Colombian emeralds and other material (the "Salvaged Martial") Jay reported he had discovered in international waters in the Gulf of Mexico (the "Salvage Site"). I also am a member of JTR's "Advisory Board." Pursuant to the terms of JTR's Limited Liability Company Agreement (the "LLC Agreement"), Jay has the sole discretionary authority to manage the business and affairs of JTR, subject only to an obligation to confer with and take advice from the Advisory Board on various matters. In my role as a member of the Advisory Board, I have followed the Admiralty Action claim since its inception, and I have conferred with Jay Miscovich and others, including JTR's various attorneys, throughout the process, and for more than a year prior to JTR's commencement of the Admiralty Action.

3.      In addition to being a member of JTR's Advisory Board, I have created a charitable trust, which holds a membership interest in JTR. My wife and I are the trustees of that trust and if JTR is awarded title to the emeralds and other material subject to JTR's pending claim in this Court, and JTR thereafter generates profits, the share of those profits allocable to the charitable entity will be utilized for charitable purposes. I also have an ownership interest in another entity that holds a small ownership interest in JTR

3.      At no time have I ever heard Jay Miscovich, or any other person associated with JTR, state or even suggest that the Salvaged Material has any connection, whatsoever, to the *Atocha*. Rather, at all times since that assertion was made by Motivation, JTR, Jay, and everyone associated with them consistently have denied Motivation's allegation – in this Court, in communications with Motivation and its counsel, and at any other time in which the issue was discussed.

4.      Since the time Motivation first surfaced its claim, JTR has made numerous attempts to get Motivation to withdraw its claim amicably. One such attempt, which occurred fairly early in the course of the litigation, involved a proposal by JTR that the issue be resolved by Dr. Eugene Lyon – a board member and co-founder of the Mel Fisher Maritime Heritage Society, and one of the most knowledgeable individuals respecting the *Atocha* and its cargo. (Biographical information about Mr. Lyon and his relationship to Mel Fisher and the Atocha appears on the website of Mel Fisher Maritime Heritage Society at http://melfisher.org/genelyonboard.htm). I was personally involved in making this proposal to Motivation and its counsel. We made this proposal in an effort to reach a quick, common sense agreement with the Fishers that would avoid a lengthy, needless, and expensive court process. Specifically, we offered to allow Dr. Lyon to inspect the Salvaged Material, visit and explore the

Salvage Site, and conduct any research he felt necessary to reach a conclusion on whether or not the emeralds came from the *Atocha*. If, as we expected to occur, Dr. Lyon determined that the Salvaged Material did not come from the Atocha, we expected that Motivation would promptly withdraw its claim. Alternatively, in the off-chance that Dr. Lyon were to determine that the Salvaged Material was from the *Atocha*, everyone would be a "winner" because we would then agree to a process by which JTR and Motivation could work together to maximize the value of the Recovered Material.

5.      We trusted Dr. Lyon's integrity and both hoped and expected that the Fishers would feel the same way. We also thought that the Fishers did not truly believe that the Salvaged Material was from the *Atocha* and that our offer would be a good way to "call their bluff." If, however, the Fishers truly believed that the Salvaged material might be from the *Atocha*, we thought they would want to jump at the chance to let Dr. Lyon be the arbitrator.

6.      I specifically recall that we had a conference call with representatives of Motivation and their counsel to discuss our proposal. While there may have been others on the call, I recall that the participants included myself, David Horan (JTR's counsel of record in the maritime litigation), Kim and Sean Fisher (both representatives of Motivation), and Marlow "Buster" White (Motivation's counsel of record in the maritime litigation). During the course of the conference call, David and I repeatedly explained that we did not believe that the emeralds came from the *Atocha*. In fact, we made it very clear that our whole group felt that there was absolutely no evidence of any kind that would suggest that the emeralds had anything to do with the *Atocha*.

7.      As we discussed various elements of our proposal, Kim or Sean Fisher said: "Why don't we just say that they came from the *Atocha*?" I responded by, again, pointing out

that we did not believe that the emeralds were from the *Atocha*. The conversation continued for a while, and then Kim or Sean Fisher again suggested that we simply declare that the find was from the *Atocha* and be done with it. Again, I responded that we would need to believe that the emeralds truly were from the *Atocha*, that we would need actual evidence of that fact, and that we unwilling to get into a situation where JTR was marketing the Salvaged Material as coming from the *Atocha* without knowing or even believing that was correct. As noted above, Motivation's counsel of record in the maritime litigation participated on the call. While I do not recall Motivation's counsel speaking out against the suggestion, it is possible that Mr. White did so, and that I simply do not recall his doing so. I do, however, remember the comments coming from Kim or Sean Fisher, as I was taken aback by them.

8.      At about the same time, but in a separate conversation with Motivation's counsel, David Horan and I offered on behalf of JTR, to allow Mr. Marcial to inspect the emeralds in the Key West bank. Indeed I was an advocate within our group urging that we provide this access. The only stipulation was that Motivation first provide the criteria that Mr. Marcial would use to decide whether or not the emeralds might be from the *Atocha*.

1.    9.    Motivation's unwillingness to provide this criteria along with their refusal to take the "Eugene Lyon" proposal seriously, destroyed any remaining hope on my part that Motivation was dealing honestly in our settlement discussions.

**FURTHER AFFIANT SAYETH NOT**.


_____
Paul Sullivan

STATE OF HAWAII          )
                         )    SS.
ISLAND OF _____       )


This __th day of October, 2012, personally appeared before me, a Notary Public for the State and Island aforesaid, Paul Sullivan, who, by me being first duly sworn, deposed and said that the facts set forth in the foregoing affidavit are true and correct to the best of his knowledge and belief.


_____
Notary Public

My commission expires on _____, 200_

FURTHER AFFIANT SAYETH NOT.

Paul Sullivan

STATE OF HAWAII       )
*City & County*
~~ISLAND~~ OF *Honolulu*   )   SS.

This *9* th day of October, 2012, personally appeared before me, a Notary Public
*City + County of Hon.*
for the State and ~~Island~~ aforesaid, Paul Sullivan, who, by me being first duly sworn, deposed and

said that the facts set forth in the foregoing affidavit are true and correct to the best of his

knowledge and belief.

Notary Public
PHYLLIS A. BUENO
My commission expires on *Oct 9, 2012*
*10-25-14*

Doc. Date: *undated*   # Pages *5*

Notary Name:   Phyllis A. Bueno   First Circuit

Doc. Description *affidavit of Paul Sullivan*

*Phyllis A. Bueno*   *10-9-12*
Notary Signature                    Date