UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**"IN ADMIRALTY"**

JTR ENTERPRISES, LLC,

                Plaintiff,

vs.                                                CASE NO. 4:11-CV-10074-JLK

AN UNKNOWN QUANTITY *etc*.,

          *In Rem* Defendant,

_____/

**JTR'S RESPONSE AND MEMORANDUM OF LAW
IN OPPOSITION TO MOTIVATION'S MOTION TO STRIKE JTR'S
RESPONSE IN OPPOSITION TO MOTIVATION'S MOTION FOR SANCTIONS**[1]

       Plaintiff, JTR Enterprises, LLC ("JTR"), by and through its undersigned counsel and pursuant to Local Rule 7.1, hereby submits its Response and Memorandum of Law in Opposition to Intervener, Motivation, Inc.'s ("Motivation"), Motion to Strike JTR's Response in Opposition to Motivation's Motion for Sanctions (D.E. 145), and states:

**I.**      <u>**Introduction**</u>

       Motivation's Motion to Strike should be denied for the fundamental reason that JTR's response in opposition to Motivation's motion for sanctions is entirely appropriate and well founded – both legally and factually.  Additionally, Motivation provides no legal or factual support for its extraordinary request.  By contrast, Motivation's motion to strike is interposed to cause unnecessary delay in the ultimate resolution of JTR's Verified Claim.  As this Court has observed, "[m]otions to strike on the grounds that they are insufficient, immaterial, irrelevant and redundant are not favored, often being considered 'time wasters'" *Poston v. American President*

---

[1]      Additionally and/or alternatively, Motivation requests a ten day extension of time to file its Reply in support of its Motion for Sanctions.  JTR does not object to the requested extension.

*Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978) (King, J.) (citation omitted).  *See also Brown v.*

*Seebach*, 763 F. Supp. 574, 583 (S.D. Fla. 1991) (King, J.) (observing that a motion strike "often is

sought by the movant simply as a dilatory tactic").

**A.     *Procedural Background.***

        The pertinent procedural background preceding the filing by Motivation of its Motion to

Strike is set forth (i) on pages 3 through 5 of JTR's Response in opposition to Motivation's

pending Motion for Sanctions ("JTR's Response") (D.E. 142), (ii) pages 1 through 6 of JTR's

Response in Opposition to Motivation's Motion to Compel (D.E. 135), and (iii) paragraphs 34

through 70 of the Silverstein Affidavit, which is exhibit U to D.E. 142.  The only thing that has

occurred since the filing of JTR's response in opposition to Motivation's Motion for Sanctions is

that Motivation has now filed a Motion to Strike JTR's Response.  (D.E. 145).

**B.     *The Relevance of JTR's Response.***

        JTR's Response is entirely relevant to Motivation's Motion for Sanctions.   Motivation

alleges the following in its Motion for Sanctions:

> 3.      Upon verification by Motivations' Director of Operations that the
> coordinates of the *res filed* in this court were in a reasonably close proximity to
> the northern boundaries of the ATOCHA and SANTA MARGARITA injuncted
> areas and is in the general direction of the projected scatter trail of these wrecks,
> Motivation filed its Verified Statement of Right and Interest and Claim [Doc 10]
> on October 16, 2011, because, other than emeralds found in the scatter trail of the
> ATOCHA shipwreck, Motivation is unaware of any other Colombian emeralds
> that have ever been recovered in this area of the Gulf of Mexico or the Atlantic
> Ocean.
>
> 4.      Immediately after filing its claim, in a good faith effort to promptly assure
> Motivation shareholders and its related Mel Fisher Expedition investors that either
> none of the emeralds in the alleged *res* were from the ATOCHA and SANTA
> MARGARITA, or that Motivation had grounds to further assert an owner's
> claim to the salvaged items, Motivation's counsel commenced a  series of
> teleconferences and correspondence with JTR's  then lead counsel, David Paul
> Horan, and representatives of Plaintiff seeking an inspection of the finds by

independent Colombian emerald expert, Manuel J. Marcial, to promptly determine which of these two scenarios was more likely.

\*       \*       \*

12.     Motivation believes and, therefore, avers that the valuable emeralds shown to the New York investors, and the gemologists at the Smithsonian Institute, were comprised of emeralds that had been a part of the cargo of the ATOCHA; and, that the source of, at least some of, the valuable emeralds were distributed to Miscovich in a division of treasure when he was an investor in one of the annual Atocha-Margarita Expeditions organized by the Fishers and that the others were purloined by Steve Elchlepp's diver-friend Kent Van Raalte, a former Motivation sub-contractor who has worked on the ATOCHA "Emerald City" site.

\*       \*       \*

14.     Had Motivation not filed a claim in this action and pursued the inspection to a conclusion, Motivation believes that the valuable emeralds would have been re-inserted into the *res* by Miscovich and no expert would have examined the res; so, that the low-grade modern emeralds would have been anointed with the provenance of genuinely valuable emeralds from an ancient shipwreck.

15.     Jay E. Miscovich, a/k/a Doctor Jay and Jay E. Miscovich, M. D., worked securities fraud upon his investors and, in an attempt to complete the fraud, initiated this action in an abuse of the court.  This litigation, therefore, was initiated in bad faith in an effort to utilize this Court to commit a fraud on the public and, *per force,* a fraud on the Court.

16.     JTR's pleadings and resistance to facilitating an inspection that would promptly rid JTR of the only claimant against the *res,* Motivation, can only be explained as a continuing perpetration of a fraud upon the court.

(D.E. 123).

In paragraph 3 of Motivation's Motion for Sanctions, Motivation cites to "Doc 10", which is its initial Verified Claim in which Motivation asserted its "floating barrel theory" as its then sole basis for wrongfully interjecting itself into the instant admiralty claim.  (D.E. 10).

JTR's Response squarely addresses the foregoing issues (and others) that Motivation has raised in its Motion for Sanctions, as follows:

(a)      JTR submitted the affidavit of Jay Miscovich to establish that his claim is legitimate and that Motivation's public relations representative, Joe Sweeney, told Mr. Miscovich that Kim Fisher had only filed the claim because Motivation's investors had brought JTR's find to his attention after reading about it in the newspaper and thought JTR's find might be the missing *Atocha* emeralds that Motivation had been "searching for," and that Mr. Fisher did not believe the emeralds were from the *Atocha* and was looking for a "graceful way out" of the lawsuit and as soon as Motivation's emerald expert, Manuel Marcial, confirmed JTR's emeralds were not from the *Atocha*, Motivation would withdraw its claim.

(b)      JTR submitted the affidavit of Paul Sullivan to establish the reason for JTR's early distrust of Motivation.  In particular, early in the case and during a teleconference in which JTR's representative, Paul Sullivan, was attempting to work out with Motivation's representatives (Kim Fisher, Sean Fisher and Buster White) a mutually agreeable inspection of the emeralds by Dr. Eugene Lyon to confirm the emeralds were not from the *Atocha*, either Kim Fisher or Sean Fisher suggested to Mr. Sullivan that the parties should just "skip the inspection" process altogether and "just say that JTR's emeralds were from the *Atocha*" and market them together as *Atocha* emeralds.  Mr. Sullivan refused to become involved in such a scenario, terminated the discussion and instantly became distrustful of Motivation.

(c)      JTR submitted the sworn statement of Kent Van Raalte (who does not work for or have any interest in JTR) to establish that he never took any *Atocha* emeralds and is not aware of anyone that has ever been associated with JTR or Mr. Miscovich's group as having taken any emeralds from the *Atocha* site, or otherwise having claimed that any *Atocha* emeralds were JTR's emeralds.

JANSSEN & SIRACUSA, P.A.
120 South Olive Avenue, Suite 504 * West Palm Beach, FL 33401
Telephone (561) 420-0583 * Facsimile (561) 420-0576

(d)     JTR submitted the criminal records of Gerry Edwards and Scott Wilding, (alleged affiants of the "affidavits" Motivation filed in support of its alternative "theft claim") to show their lack of credibility and trustworthiness.

(e)     JTR submitted the prior deposition testimony of Mel Fisher and statements from the books of former Fisher insiders, Dr. Eugene Lyon (archival researcher), Dr. Duncan Matheson (archaeologist), Don Kincaid (underwater photographer and archaeologist) and Jedwin Smith (diver), to establish Motivation's "floating barrel theory" and claims of anywhere from "60 to 500 pounds of missing *Atocha* emeralds" are factually implausible.

(f)     JTR submitted the affidavit of Dr. Lee Branscome, C.C.E. (meteorologist) to establish that Motivation's floating barrel theory is scientifically implausible.

(g)     JTR submitted excerpts, a report and emails from Professor Kris Lane, PhD (Scholes Chair Professor of Colonial Latin American History at Tulane University and colonial era emerald trade expert)[2] to establish Motivation's claims of found and yet to be found *Atocha* rough emeralds ranging from "60 to 500 pounds" and other wild statements Motivation has made concerning the alleged vast quantities of *Atocha* emeralds, are totally unsupported by colonial archival records.[3]   The excerpts from Dr. Lane's book were also submitted to rebut

---

[2]     Dr. Lane has authored a number of academic books including: Colour of Paradise (Yale University Press, 2010). Pillaging the Empire: Piracy in Americas, 1500-1750 (M.E. Sharp, Inc.,1998), Quito 1599: City & Colony in Transition (University of New Mexico Press, 2002) and Piracy: Oxford Bibliographies Online Research Guide (Oxford University Press, 2010), Blood and Silver: A History of Piracy in the Caribbean and Central America (Signal, 2010) ; and co-authored: Riddle of Latin America, (Wadsworth Publishing, 2011) Latin America in Colonial Times (Cambridge University Press, 2011), The Atlantic World: A History 1400 to 1888 (Wiley-Blackwell, 2007); The Indian Militia and Description of the Indies (The Cultures and Practice of Violence) (Duke University Press, 2008); The Crossroads and Cultures A History of the World's Peoples (Bedford/ St. Martin's, 2012).

[3]     Dr. Lane researched and analyzed original source material from Colombia's National Archive in Bogota, the Regional Archive of Boyaca, Tunja, Colombia, the Archivo Central del Cauca, Popayan, Colombia, The National Archive of Ecuador in Quito, Spain's Archive of the Indies and

JANSSEN & SIRACUSA, P.A.
120 South Olive Avenue, Suite 504 * West Palm Beach, FL 33401
Telephone (561) 420-0583 * Facsimile (561) 420-0576

Motivation's other wild statements concerning the alleged vast quantities of *Atocha* emeralds , which are set forth in exhibits to Motivation's Motion for Sanctions.[4]

      (h)    JTR submitted statements made by Kim Fisher (Motivation's President), Sean Fisher (Motivation's Director of Marketing and Sales), Shawn Cowles (Motivation's Director of Investor Relations) and Manuel Marcial (Motivation's putative *Atocha* emerald expert and long time confederate) to establish the true basis for Motivation's frivolous intervention is entirely investor driven and the extent of Motivation's incredible false statements concerning the "60 to 500 pounds of *Atocha* emeralds yet to be found" which form the unsupportable underlying basis for its Verified Claim and its Motion for Sanctions.

      (i)    JTR submitted the 1987 lawsuit filed by Debra Benedict against Mel Fisher, Treasure Salvors, Inc. (Motivation's alleged predecessor) and Manuel Marcial for fraud, the 1990 indemnification agreement between Mel Fisher and Manuel Marcial concerning his appraisals of *Atocha* emeralds, and the transcript of a recent video infomercial for Motivation starring Manuel Marcial, to establish his long standing business relationship with Motivation, and that he is neither independent nor unbiased, and that his disparaging "reports" of JTR and its find should be viewed as such.[5]

---

National History Archive, the National Libraries of Spain, Portugal and Great Britain, Portugal's Torre do Tombo National Archive, England's Parliamentary Archive and several other repositories.

[4]  Motivation claims "every wealthy passenger aboard the Atocha (and Margarita) probably had emeralds from Colombia and the private citizens most "often had hoards of emeralds" that were not on the manifest. *See* (D.E 123-1, at ¶ 10.b). Motivation's statements contradict Dr. Lane's research.

[5]  Mr. Marcial has purported to author three separate reports for Motivation, all of which have been filed with the Court and are being relied upon by Motivation in support of its Motion for Sanctions.

JANSSEN & SIRACUSA, P.A.
120 South Olive Avenue, Suite 504 * West Palm Beach, FL 33401
Telephone (561) 420-0583 * Facsimile (561) 420-0576

(j)     JTR submitted the affidavit of Bruce L. Silverstein, Esquire to establish the legitimacy of JTR's claim, including its genesis and complete history prior to the filing of the instant admiralty claim, to demonstrate the extensive scientific efforts and willingness JTR has undertaken to date, through testing to determine the origin of the instant emeralds, and to show that the issues Motivation has tried to raise concerning the Delaware Litigation and the Kirby Site are red herrings.  The Silverstein Affidavit shows, beyond peradventure, that JTR's Verified Claim most certainly is not a fraud on the court, and that Motivation's Motion for Sanctions should be summarily denied.

(k)     JTR submitted evidence in response to Motivation's assertion that it found a "red emerald" from the *Atocha*.  It is beyond dispute that red emeralds were not discovered until the Twentieth Century.  Motivation's "tale of the *Atocha* red emerald" demonstrates the willful and outrageous lies that Motivation is willing to tell to further its own interests and underscores its fraudulent and cynical abuse of the judicial process in furtherance of its ongoing enterprise.

In view of the foregoing and for the reasons discussed further *infra*, JTR's Response is relevant and directly addresses the numerous issues Motivation has raised in its sanctions Motion.  Accordingly, Motivation's Motion to Strike should be summarily rejected.

## II.     <u>Memorandum of Law</u>

In addition to recognizing motions to strike as "time wasters," this Court repeatedly has instructed that such motions "will be denied unless the allegations have no possible relation to the controversy."  *Poston v. American President Lines, Ltd*., 452 F. Supp. 568, 570 (S.D. Fla. 1978) (King, J.) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir. 1962)).  Additionally, just the day before Motivation filed its motion to strike, this court instructed for the

JANSSEN & SIRACUSA, P.A.
120 South Olive Avenue, Suite 504 * West Palm Beach, FL 33401
Telephone (561) 420-0583 * Facsimile (561) 420-0576

umpteenth time that (i) motions to strike "are generally disfavored by the court," and (ii) the grant of such a motion is a "drastic remedy to be resorted to only when required for the purposes of justice." *Nationwide Life Ins. Co. v. George*, 2012 U.S. Dist. LEXIS 146454, at *9-10 (S.D. Fla. Oct. 11, 2012) (citations and quotations omitted); s*ee also Sterbenz v. Anderson*, 2012 U.S. Dist. LEXIS 146383, at *4 (M.D. Fla. Oct. 12, 2012) (same); *Nash v. O.R. Colan Group, LLC*, 2012 U.S. Dist. LEXIS 134727, at *2 (S.D. Fla. Sept. 20, 2012) (same).   Based on this well-settled law, Motivation's Motion to Strike does not even pass the "blush test."

In its underlying Motion for Sanctions, Motivation accused JTR of unduly delaying the progress of this litigation by filing a Motion for Judgment on the Pleadings (which the Court granted without prejudice) and a Motion to Stay Discovery (which the Court also granted).   In response to Motivation's Motion for Sanctions, JTR has properly shown that JTR's vigorous opposition to Motivation's interference with JTR's Verified Claim was perfectly appropriate in view of the fact that Motivation has asserted its competing claim is support of a fraudulent scheme that Motivation has been pursuing for many years.   Put simply, the emeralds that are the subject of JTR's Verified Claim could not have been cargo on the *Atocha*.   There are, of course, many other reasons why Motivation's motion for sanctions should be denied.   It cannot, however, be disputed that the information contained in the document Motivation now seeks to have stricken directly relates to JTR's defense to Motivation's Motion for Sanctions.

JTR's absolute strongest defense to Motivation's Motion to Strike is the fact that JTR's prosecution of its Verified Claim has been entirely above board – as detailed in the Silverstein Affidavit.   It cannot be said, however, that JTR's exposure of Motivation's fraudulent conduct "has no possible relation" to JTR's defense of Motivation's frivolous motion for sanctions.   Plainly, Motivation cannot expect to obtain sanctions from JTR if Motivation's own competing claim was

fraudulent from the start – as shown in JTR's response, which Motivation seeks to have stricken. As such, Motivation's Motion to Strike should be denied – as should Motivation's underlying Motion for Sanctions.

## IV. <u>CONCLUSION</u>

WHEREFORE, JTR respectfully requests this Honorable Court deny Motivation's Motion to Strike.  JTR also respectfully requests the Court deny Motivation's Motion for Sanctions, award JTR its attorney's fees and costs of defending the Motion, and grant any other and further relief the Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 15, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CMECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,
JANSSEN & SIRACUSA, P.A.
Co-Counsel for Plaintiff
120 South Olive Ave., Suite 504
West Palm Beach, FL 33401
Tel. (561) 420-0583
Fax (561) 420-0576
Email mlazarchick@jasilaw.com
Email jjanssen@jasilaw.com
Email jsiracusa@jasilaw.com


By:   <u>s/ Joseph W. Janssen, III</u>
MELISSA D. LAZARCHICK
Florida Bar No. 43696
JOSEPH W. JANSSEN, III
Florida Bar No. 160067
JOHN M. SIRACUSA
Florida Bar No. 0159670

*(Service List follows)*

*Service List:*

**Arthur Eugene Lewis, Jr.**
Lewis & White, P. L. C.
222 W. Georgia Street
PO Drawer 1050
Tallahassee, FL 32301-1050
850-425-5000
Fax: 850-425-5004
Email: lawlaw@polaris.net

**Marlow V. White, Jr.**
Lewis & White
222 W Georgia Street
PO Drawer 1050
Tallahassee, FL 32030-1050
850-425-5000
Fax: 425-5004
Email: lawlaw@polaris.net

**Jessica L. Martyn**
Troutman Sanders, LLP
150 W. Main Street
Suite 1600
Norfolk, VA 23510
757-687-7706
Email: jessica.martyn@troutmansanders.com

**John E. Holloway**
Troutman Sanders, LLP
150 W. Main Street
Suite 1600
Norfolk, VA 23510
786-687-7724
Email: john.holloway@troutmansanders.com

**Craig Patrick Liszt**
McAlpin Conroy, P.A.
80 SW 8th Street
Suite 2805
Miami, FL 33130
305-810-5400
Email: cliszt@mcalpinconroy.com

JANSSEN & SIRACUSA, P.A.
120 South Olive Avenue, Suite 504 * West Palm Beach, FL 33401
Telephone (561) 420-0583 * Facsimile (561) 420-0576

**Michael Edward Conroy**
McAlpin & Conroy PA
80 SW 8th Street
Suite 2805
Miami, FL 33130
305-810-5400
Fax: 810-5401
Email: mconroy@mcalpinconroy.com

JANSSEN & SIRACUSA, P.A.
120 South Olive Avenue, Suite 504 * West Palm Beach, FL 33401
Telephone (561) 420-0583 * Facsimile (561) 420-0576