UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION
**IN ADMIRALTY**

JTR ENTERPRISES, LLC,
    Plaintiff,

vs.                                                                     CASE NO. 4:11-CV-10074-JLK

AN UNKNOWN QUANTITY, etc.
    *In Rem* Defendant.
_____/

**SPECIALLY APPEARING NON-PARTIES YOUNG CONAWAY STARGATT & TAYLOR, LLP'S AND BRUCE L. SILVERSTEIN, ESQ.'S REPLY IN FURTHER SUPPORT OF THEIR JOINT MOTION TO QUASH SERVICE OF PROCESS**

Specially appearing non-party Movants submit their Reply in response to Motivation's Opposition to the Motion of Bruce Silverstein and the Young-Conaway Law Firm to Quash Service of Process ("Opposition") (D.E. 474) and in further support of their motion to quash service of process ("Motion to Quash") (D.E. 463).[1]

## I. INTRODUCTION

Motivation ignores the plain text of the Federal Rules of Civil Procedure (the "Rules") and the Florida long-arm statute (the "State Statute"), relies on irrelevant and outdated decisional law, blatantly mischaracterizes the record (much of which is immaterial to the Motion to Quash), and, like the shifting tides, ebbs away from its repeated acknowledgments (and "law of the case") that Movants are *not* parties to this proceeding, in an attempt to convince the Court that the Order to Show Cause ("OSC") was validly served on Movants.  In fact, the OSC is not a "summons" governed by Rule 4, and Movants are not "parties" or "defendants" to which service of papers under Rule 5 or process under the State Statute applies.  The Rules and the relevant decisional law make clear that service of the OSC is subject to the requirements and territorial limitations of Rule 4.1(a), and that the OSC was not validly served on Movants in Delaware. Motivation is grasping at straws through frivolous arguments that have no basis in law or fact.

---

[1] Capitalized terms used but not otherwise defined in this Reply shall have the meanings ascribed to them in the Motion to Quash (image at D.E. 459), which is incorporated by reference.

Application of Rule 4.1 (and not Rules 4 or 5 or the State Statute) makes perfect sense inasmuch as (i) Movants are neither parties nor counsel of record to any party in the Admiralty Action, (ii) the OSC does not involve a specific court order or injunction, and (iii) the Sanctions Motion was filed by a litigant (that is an intermeddler in the action, no less). Moreover, Motivation asks the Court to extend its "inherent authority" beyond the boundaries established by *Chambers*, which cautioned that inherent powers of federal courts "must be exercised with restraint and discretion."

## II.   REPLY

**A.   The OSC Has Not Been Validly Served on Movants Pursuant to Rule 4.1.**

Motivation erroneously contends that service of the OSC on Movants in Delaware satisfies Rule 4.1. (Opp. at 3-8). In so arguing, Motivation conspicuously ignores the plain text of the Rules, relies on decisions that are legally and factually inapposite, and further ignores decisional law that refutes Motivation's arguments.

Rule 4.1 provides, in pertinent part, that process "other than a summons under Rule 4 . . . may be served anywhere within the territorial limits of the state where the district court is located and, if authorized by a federal statute, beyond those limits." Fed. R. Civ. P. 4.1(a). Consistent with the plain language of Rules 4 and 4.1, the Eleventh Circuit has instructed that "Rule 4 addresses only service of the summons," and "[Rule 4.1] governs service of process other than a summons or subpoena." *United States v. Elmes*, 532 F.3d 1138, 1144 (11th Cir. 2008). The OSC is neither a summons nor a subpoena. Rather, the OSC is an order directing non-parties to respond to Motivation's private motion for sanctions. As such, Rule 4.1(a) governs service of the OSC,[2] and Motivation has failed to meet its burden to prove valid service of process.[3]

---

[2] *Fid. Nat'l Fin., Inc. v. Friedman*, 2010 U.S. Dist. LEXIS 35851, at *18-19 (D. Ariz. Mar. 12, 2010) ("Because the process here is an [Order to Show Cause] and not a summons, the court must look to Rule 4.1(a)."). Rule 4.1(b) is not applicable because the Court has not issued a decree or injunction, and the OSC is thus not an order seeking to hold Movants in contempt. Even if the Court were to consider the OSC an "order in a civil-contempt proceeding" (which it is not), the service of the OSC on Movants would still be invalid, as the attempted service was still made more than 100 miles from the situs of this Court. *Id. Accord* Judge William W. Schwarzer et al., Federal Civil Procedure Before Trial §13:247 (2007) (treatise noting, in discussion of orders to show cause for violations of preliminary injunctions, that "…[t]he order

01:16029345.6

2

Motivation argues that *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986), and *Red 1 Investment, Inc. v. Amphion International, Ltd.*, 2007 U.S. Dist. LEXIS 85675 (E.D. Wash. 2007) somehow validate the service of the OSC on Movants outside of Florida. Unsurprisingly, neither decision supports Motivation's argument. *Waffenschmidt* pre-dates Rule 4.1, and deals with authority to hold a non-party in contempt of an injunction pursuant to Rule 65. Consistent with Rule 4.1(b), *Waffenschmidt* stands for the proposition that there is no territorial limitation for service of an Order to Show Cause that deals with **violation of an injunction**. Unlike here, *Waffenschmidt* does not involve an Order to Show Cause requiring a non-party located outside the district to respond to a private motion for sanctions. Significantly, Rule 4.1 draws this same distinction (essentially codifying the result of *Waffenschmidt*) by excluding process for contempt of an injunction (or other specific court order) from the territorial limitation of Rule 4.1.[4]

*Red 1 Investment, Inc. v. Amphion International, Ltd.*, 2007 U.S. Dist. LEXIS 85675 (E.D. Wash. 2007), similarly deals with the authority to hold a non-party in contempt for violating an injunction. Indeed, a material basis for the *Red 1* court's decision is its reliance upon the specific language of Rule 65, which expressly authorizes the extension of an injunction

---

must be served in the state in which the district court is located or within 100 miles from the courthouse in which it was issued.").

[3] Florida courts consistently have held that "the burden of proof to sustain the validity of service of process is upon the person who seeks to invoke the jurisdiction of the court." *Green v. Jorgensen*, 56 So. 3d 794, 798 (Fla. 1st DCA 2011) (citation omitted); *see also Rodger v. Quicken Loans Inc.*, 2013 U.S. Dist. LEXIS 174024, *9 (M.D. Fla. Sept. 19, 2013) (same).

[4] As the Fifth Circuit later explained in *McGuire v. Sigma Coatings*, 48 F.3d 902 (5th Cir. 1995):

> [The non-party respondents in *Waffenschmidt*] were found to have violated an injunction by helping a party transfer disputed funds out of the court's jurisdiction. Relying on Rule 65, we held that "nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order." *Id.* at 714. Even in that case, however, we noted the importance, for jurisdictional purposes, of a show cause order directed specifically to the defendants. *Id.* at 719. . . . **Moreover, in this case, unlike *Waffenschmidt*, there is no assertion that Veach disobeyed or aided others in disobeying any order of the district court.**

*Id.* at 907 n.12 (emphasis added); *see also In re VIII S. Mich. Assocs.*, 175 B.R. 976, 986 (Bnkr. N.D. Ill. 1994) (similarly explaining that *Waffenschmidt* applies only where a "non-party knowingly, or with notice, aids and abets a party in violation of a court order," and holding that valid service of process is required where "no court order has been violated").

01:16029345.6

to non-parties affiliated with the enjoined party. The court in *Red 1* also relied on Rule 71, which provides authority to hold non-parties in contempt of specific Court orders that allegedly have been violated by non-parties. Like *Waffenschmidt*, *Red 1* is consistent with the first sentence of Rule 4.1(b), and does not provide a basis for service of "other process" putatively served on Movants outside the territorial limits of this Court.[5]

Specific support for the Motion to Quash appears in *Fidelity National Financial, Inc. v. Friedman*, 2010 U.S. Dist. LEXIS 35851(D. Ariz. Mar. 12, 2010),[6] which held that the court lacked personal jurisdiction over non-parties because the applicant for relief ("Fidelity") "did not serve the OSC in compliance with Rule 4.1." *Id.* at *22. In that case, Fidelity moved for an order directing certain non-parties to show cause why they should not be sanctioned under the court's inherent power. *See id.* at *20. The court granted the motion, and Fidelity provided the non-parties with actual notice of the OSC, but did not cause it to be validly served pursuant to Rule 4.1. In holding that valid service pursuant to Rule 4.1 is a prerequisite to the Court's exercise of jurisdiction over a non-party with respect to the OSC, the court reasoned as follows: "[W]hen it is sought to charge a person with contempt who was not a party to the original action and thus not already within the jurisdiction of the court, that party must be served with process as in any other civil action." *Id.* at *14.[7] The *Fidelity* court also explained that "service of process

---

[5] *Manez v. Bridgestone Firestone North American Tire, LLC*, 533 F.3d 578 (7th Cir. 2008) does not support Motivation's position. In *Manez*, the court did not address, much less decide, whether service complied with the requirements of Rule 4.1 because the appellee did not serve anything on the appellant, let alone service of process that complied with Rule 4.1 (or Rule 4).

[6] On page 2 of its Opposition, Motivation spuriously asserts that Movants have engaged in bad faith litigation by "misrepresenting the law [see, e.g., the District of Arizona case below]." Motivation fails to identify the case and fails to state how Movants allegedly have misrepresented the law. Indeed, Motivation' makes no further mention of the issue. Presumably, the referenced case is the *Fidelity* case cited in the Motion to Quash at 25 and further discussed in this Reply. Movants have not misrepresented the *Fidelity* case (or any other case they have cited) and Motivation does not even attempt to prove otherwise.

[7] The *Fidelity* court further explained that "[t]he familiar 'minimum contacts' test . . . provides a *basis* for an exercise of jurisdiction," but "service of process is the *mechanism* by which the court actually acquires the power to enforce a judgment against the defendant's person or property." *Id.* at *13. Fidelity's argument that the non-parties had "sufficient contacts with Arizona so as not to offend traditional notions of due process" was thus beside the point. *Id.* at *22. "[B]efore issuing an order of contempt against non-parties . . . , there must be a basis for the exercise of that jurisdiction and a mechanism by which this court can assert personal jurisdiction." *Id.* at *14. Fidelity had the burden of proof as to personal jurisdiction. *Id.* at *17.

is a distinct and separate concept from the court's personal jurisdiction," and noted that the two distinct concepts are "often conflated" – such as by Motivation here. *Id.* at *13.

Although neither side cited Rule 4.1 in *Fidelity*, the court held, *sua sponte*, that Rule 4.1 controlled the manner of effecting valid service. As the court wrote: "Because the process here is an OSC and not a summons, the court must look to Rule 4.1(a)." *Id*. at *18. *See also id.* at *18-19 ("Rule 4.1] governs the method for service of '[p]rocess . . . *other than* a summons under Rule 4 or a subpoena under Rule 45.'"). The court further explained that Rule 4.1 directs both (i) "who shall make service" and (ii) "where that officer can make service." *Id.* at *19 (quoting *Hilao v. Estate of Marcos*, 95 F.3d 848, 853 (9th Cir. 1996)). Because valid service of the OSC had not been made in compliance with the requirements of Rule 4.1, the court lacked jurisdiction over the non-parties and denied the OSC in all respects.

As a fallback argument, Motivation offers the naked assertion (without any authority) that service of the OSC should be "deemed" to have been made in Florida pursuant to the State Statute. (*See* Opp. at 3). Motivation is wrong for two separate and independent reasons.

*First*, Rule 4.1 precludes the use of the State Statute for service of the OSC. By its express terms, Rule 4.1 expressly authorizes the service of the OSC only "within the territorial limits of the state where the district court is located" unless "authorized by a federal statute." It is plainly the case that the State Statute is not a "federal statute" – and even Motivation does not contend otherwise. By contrast, Rule 69(a), which governs service of a writ of garnishment (which is a specific type of "other process"), explicitly authorizes service "in accordance with the practice and procedure of the state in which the district court is held." If the drafters of Rule 4.1 had desired to achieve the same result as Rule 69(a), it would have been a simple enough matter to have included in Rule 4.1 the same language that appears in Rule 69(a). The absence of such language in Rule 4.1 precludes Motivation's resort to the State Statute as a mechanism for service of the OSC pursuant to Rule 4.1. This is supported by the maxim of statutory construction known as *expressio unius est exclusio alterius* (the expression of one is the exclusion of the other). In the absence of language incorporating state law into Rule 4.1 (as is

the case with Rule 69(a)), the State Statute is in conflict with, and trumped by, Rule 4.1 – as previously recognized by this Court (albeit in a slightly different context).[8]

*Second,* the State Statute does not apply to the OSC, in any event. By its express terms, the State Statute provides a mechanism for ***commencing a lawsuit*** in Florida against a non-resident ***defendant***. *See, e.g.,* Fla. Stat. Ann. § 48.193(2). Indeed, the very provision of the State Statute that Motivation claims to validate service of the OSC in Delaware expressly states that service "may be made by personally serving the process upon the ***defendant*** outside this state." Fla. Stat. Ann. § 48.193(3) (emphasis added). Motivation's contention that the State Statute applies to service of process of the OSC on non-party Movants (who are not "***defendants***") is contradicted by the very terms of the State Statute, and Motivation has provided no authority (valid or otherwise) to support its contention.[9]

In the final analysis, the OSC was not validly served on Movants because (i) Rule 4.1(a) governs service of the OSC and authorizes valid service only within the Court's territorial limits unless a federal statute otherwise provides, (ii) the OSC was served on Movants in Delaware, and (iii) there is no applicable federal statute that authorizes service beyond the Court's territorial limits. As such, the Court lacks personal jurisdiction over Movants with respect to the OSC.[10]

---

[8] *See Alejandre v. Republic of Cuba*, 42 F. Supp. 2d 1317, 1341 (S.D. Fla. 1999) (Holding, in the context of a writ of execution, that Rule 4.1 trumped a conflicting Florida procedural rule concerning service of process), *quashed on other grounds*, 183 F.3d 1277 (11th Cir. 1999).

[9] Motivation also makes the unsupported and frivolous allegation that Silverstein's alleged threats to witnesses "is a tort committed in Florida" permitting this Court to exercise personal jurisdiction over Movants pursuant to the State Statute. (Opp. at 4-5). As discussed in detail in the Motion to Quash at 32-33 and the Silverstein Aff'd at ¶¶ 230-240, Silverstein never made any sanctionable, illegal, or improper threats to any witness, let alone any statement that constitutes a tort. Motivation continues to make blanket and inaccurate assertions of law without support. Similarly, as Motivation's counsel stated in an email to John Holloway in connection with a prior motion seeking sanctions against JTR and Movants, "*[n]ot relevant but we will cite Schlumberger v. Wiley, 113 F.3d 1533 (11th Cir.) and P.G. Oil Corp. v. Motiva Enterprises, 397 F.Supp.2d 1359, so Judge Moore thinks we do research*." (White email to Holloway and Sweeney (Sept. 20, 2013)) (emphasis added), a copy of which is attached hereto as Exhibit A.

[10] The Court also lacks personal jurisdiction over Movants because there is no provision of the State Statute that would justify the exercise of jurisdiction even if the State Statute could be used to effect service of process. In this respect, the only act Motivation identifies as a basis for the assertion of personal jurisdiction pursuant to the State Statute is Silverstein's alleged threatening of witnesses, which Motivation claims to be a tort committed in Florida. Motivation's allegations are facially insufficient to satisfy that prong of the State Statute, and Motivation does not assert any claim against Movants based on the alleged threats, in any event. Inasmuch as

01:16029345.6

B.     **Rules 4 and 5 Do Not Apply Because the OSC is Not a "Summons" and Movants Are Not "Parties" to the Admiralty Action.**

Motivation asserts the alternative, yet equally flawed, argument that "service under [Rule 4.1] is not required" because Movants may be served as parties pursuant to Rules 4 and 5.  (Opp. at 9-10).  In making this argument, however, Motivation ignores (and asks this Court to ignore) both the express terms of Rule 4 and 5 and the record in the Admiralty Action.

Rule 4 does not apply for the simple reason that the OSC is not a "summons."  As the Eleventh Circuit has instructed, "Rule 4 addresses only service of the summons," and "[Rule 4.1] governs service of process other than a summons or subpoena."  *United States v. Elmes*, 532 F.3d at 1144.  Rule 4 also specifies, among other things, that a summons shall "be directed to the *defendant*."  Fed. R. Civ. P. 4(a)(1) (emphasis added).

Rule 5 does not apply for the equally simple reason that Movants are not "parties" to the Admiralty Action.[11]  Indeed, this is not only inarguably correct, but it also is the "law of the case" that Movants are not parties to the Admiralty Action, and Motivation is judicially estopped from arguing otherwise.  With respect to the law of the case, this Court has held multiple times that Movants are not parties to the Admiralty Action.[12]  As for judicial estoppel, Motivation

---

there is no statutory basis for exercising personal jurisdiction over Movants, the Court lacks personal jurisdiction over them without regard to whether there are minimum contacts.  *See Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F. Supp. 1102, 1104 (S.D. Ga. 1994) ("In determining whether to exercise personal jurisdiction, courts generally should first establish whether a defendant can properly be served with process under the applicable statutory authority, and then inquire if that service comports with the constitutional principles of due process.") (citing *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir.1991)).

[11] Rule 5 governs service of "Pleadings and Other Papers" on ***parties*** to an action.  Moreover, Rule 5(a)(1) states, in pertinent part, that "*[u]nless these rules provide otherwise*, each of the following papers must be ***served on every party***…"  Fed. R. Civ. P. 5(a)(1) (emphasis added).  Here, Rule 4.1 is the Rule that "provide[s] otherwise" and Movants are not "parties."

[12] *See, e.g.,* Order at D.E. 325, at 2 (noting that Motivation sought to "compel the production of documents ***from several non-parties***," including Movants) (emphasis added); Paperless Order, December 26, 2013 (D.E. 332) (denying Motivation's prior sanctions motion (D.E. 315) as it relates to non-party Movants (and Sullivan) on the grounds that the motion was "untimely," was "lacking legal argument," and sought "to dramatically expand the scope of the [original sanctions] motion by including new arguments ***and new parties, different from those addressed in the underlying proceeding on the merits***.") (emphasis added).  *See also* Findings of Fact and Conclusions of Law (D.E. 445) at 20, fn 19 (holding that Jay Miscovich is a "non-party" in the Admiralty Action and relying on the standards for imposing sanctions against non-parties set forth in the *Feldman v. Davidson* and *Helmac Prods. Corp.* decisions as the legal authority supporting sanctions against him).  Given that Jay Miscovich has been expressly found to be a non-party to the Admiralty Action, it is clear that Movants likewise are non-parties.

01:16029345.6

successfully persuaded the Court to sequester Silverstein from the courtroom during the trial of the Admiralty Action in 2012 – which plainly would have been improper if Silverstein had been a "party" to the Admiralty Action (which he was not).[13] Additionally, Motivation's own counsel expressly acknowledged in internal communications that "Silverstein did not make an appearance and ***neither Silverstein or the Young-Conaway firm are parties.***"[14] Moreover, Motivation filed numerous papers in this Court for most of the litigation without even copying Movants, and Motivation engaged in numerous "meet and confer" communications without involving Movants. Try as it may, Motivation cannot magically transform Movants from non-parties into parties simply because it now suits Motivation's needs to do so.[15]

C. **Motivation Blatantly Mischaracterizes the Record and Interjects (and Misstates) Facts that are Immaterial to the Motion to Quash**

In addition to its flawed legal analysis, Motivation's Opposition is rife with blatant mischaracterizations of the record and misstatements or omissions of fact – all of which are immaterial to the Motion to Quash. Movants are compelled to point out some of the more egregious examples, which include, but are not limited to, the following: (i) claiming that "Judge Moore considered Silverstein's tampering with witnesses to likely be a criminal act" (Opp. at 3, n.2); (ii) claiming that JTR's counsel of record admitted that JTR fraudulently claimed an ancient provenance for the emeralds (*Id.* at 2, 5); (iii) introducing a new and inaccurate argument about a

---

[13] Throughout Motivation's most recent Sanctions Motion (D.E. 407) (and prior sanctions motions), Motivation similarly urged the Court that its inherent authority to control the proceedings before it and to ensure compliance with its orders permits the Court to award Motivation attorneys' fees notwithstanding that Movants are not parties to this action. *See, e.g.,* D.E. 407 at 18 (contending that "[a] court's inherent authority to sanction extends to the conduct of a non-party); *see also* D.E. 347 ("Silverstein and Young-Conaway are not parties in their own right . . . ."); D.E. 407 at 20 ("Counsel for non-parties Bruce L. Silverstein and Young Conaway Stargatt & Taylor related that they object to the motion.").

[14] *See* White email to Morgan (2/13/13, 6:30) (emphasis added), a copy of which is included at Tab 110 to the Appendix accompanying the Motion to Quash.

[15] Motivation's reliance (*see* Opp. at 9) on *Corporation of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.* 877 F.2d 938 (11th Cir. 1989) is misplaced. The Eleventh Circuit held only that it would entertain ***subject matter jurisdiction*** over the appeal because "it would be unjust to refuse to hear counsel's appeal" where the lower court awarded fees against a church and its ***counsel of record*** jointly and severally but the notice of appeal was filed solely in the church's name. *See id.* at 939, n.1. The case has nothing, whatsoever, to do with the exercise of personal jurisdiction over a non-party or the validity of service of process on a non-party – which is the issue herein.

meeting in New York City among Silverstein, John Holloway and Neil Ash (*see id.* at 8); and (iv) introducing a new and equally inaccurate assertion about Silverstein's interaction with a consulting expert engaged by JTR's counsel of record in the Admiralty Action (*see id.* at 5).

*First*, Judge Moore did not find that Silverstein tampered with witnesses. Nor did Judge Moore conclude that anything Silverstein did was "likely [] a criminal act." (*Id.* at 3, fn 2). With respect to the allegations Motivation levied against Silverstein, Judge Moore noted that (i) Motivation has introduced "evidence that was contradicted," and (ii) "you never know if you hear all the facts," and "we haven't heard from all of the witnesses." (Jan. 15, 2014 Hearing Tr. (D.E. 373) at 142:9-16, 146:16 – 147:8). Thus, contrary to Motivation's misrepresentations in its Opposition, Judge Moore made no findings or conclusions concerning alleged threats.

*Second*, JTR's now-former counsel of record, John Siracusa, did not admit that JTR sought to use the Court to establish provenance for the emeralds Jay Miscovich claimed to have discovered in the Gulf of Mexico; nor did the Court make any such finding. Rather, Judge Moore stated his view that ***Jay Miscovich*** (and ***not JTR***) had sought to misuse the Court, and Mr. Siracusa concurred.[16] Additionally, Motivation fails to acknowledge that it previously stipulated that "JTR has made no claim in this action as to the origin or original ownership of the Salvaged Material." Joint Pretrial Stipulation, § V.7 (D.E. 163 at 5). *See also* Silverstein Aff'd at ¶¶ 161-162.[17] Motivation also conveniently ignores the fact that it moved for reconsideration

---

[16] At the conclusion of the Sanctions Trial, Judge Moore stated his view that (i) a fraud "was concocted by ***Jay Miscovich***" (not JTR), (ii) "that's *his* fraud," (iii) "*his* artifice to defraud is to use the United States District Court," (iv) "*he* comes in to court and wants the imprimatur or the blessing or the *Good Housekeeping* seal of approval to say that this is, these are antique emeralds," and (v) "*his* artifice to defraud was to use the Court and others, wittingly or unwittingly in furtherance of *his* scheme to defraud." (Jan. 15, 2014 Hearing Tr. (D.E. 373) at 130:2-3, 131:2-11) (emphasis added). Mr. Siracusa agreed with Judge Moore's assessment of ***Jay Miscovich's*** intentions, and further noted that (i) "all the lawyers in the case wouldn't let him ever tell the Court that this came from a particular shipwreck because it was an unknown," and (ii) "a lot of good people," including JTR and its counsel, were "duped" by Jay Miscovich. (*Id.* at 131:12-15, 132:25 to 133:1-10).

[17] Throughout the course of the Admiralty Action, JTR made a number of filings in which JTR expressly noted that it was not seeking to have the Court determine the origin or value of the emeralds. This fact was also discussed in candid emails involving Silverstein and JTR's Record Counsel. *See, e.g.*, (Silverstein email to Janssen, Siracusa, and others (Oct. 27, 2013)) (stating that "JTR never sought to have the Court provide any provenance for the emeralds" and "JTR never asked that the Court determine the origin or value of the emeralds.") (D.E. 467-2 at 22).

01:16029345.6

9

of Judge Moore's refusal to hold JTR liable for Jay Miscovich's fraud, and Judge Moore denied Motivation's motion, reaffirming his determination that JTR's only misstep was its failure to disclose certain reports to the Court between December 2, 2011 and April 18, 2012.  (D.E. 450).

*Third*, Motivation refers to a meeting that occurred in New York City between Silverstein, John Holloway and Neil Ash.  (Opp. at 8).  That meeting is entirely immaterial to the Admiralty Action (much less the Motion to Quash), as it occurred in the context of attempting to clean up loose ends relating to the Delaware Litigation (not the Admiralty Action) – as Ash testified.  Moreover, Motivation mischaracterizes the substance of the meeting in yet another transparent attempt to tarnish the Court's perception of Silverstein.  Silverstein did not (and has never) referred to himself as "the king of the empire," as suggested by Motivation.

*Fourth*, Motivation claims that Silverstein attempted to "skew the testimony" of "gem expert Mona Miller."  This is a new assertion, which does not appear in the Sanctions Motion, and which Movants have not previously had an opportunity to address.  This new assertion also is inaccurate – as will be shown if this matter continues to proceed.

## CONCLUSION

Movants have not validly been served with the OSC pursuant to Rule 4.1.  Therefore, the Court lacks personal jurisdiction over Movants.  As any judgment rendered in the absence of personal jurisdiction is void and must be set aside, the Court should refrain from issuing a judgment on the Sanctions Motion in the first instance.  As Judge Moore admonished Motivation's counsel before they filed the Sanctions Motion:

> [Y]ou might want to impose sanctions on people, certain people, but if they're not within the jurisdiction of the Court, if there is no way to enforce the sanction, then the District Court should not be in a position of just entering orders that it cannot execute on, properly execute it.

(Jan. 15, 2014 Hearing Tr. (D.E. 373) at 124:1-6).

Accordingly, Movants respectfully request that the Court grant the Motion to Quash.

---

Indeed, Motivation's own counsel observed in an email that "JTR never represented to the Court that the emeralds were ancient shipwreck emeralds after it had the epoxy studies," and that "[i]f the emeralds were found at sea, the admiralty filing was appropriate whether or not they were associated with a wreck."  (Tab 132 to Appendix to Motion to Quash).

01:16029345.6

10

        Respectfully submitted,

              Kendall B. Coffey, FBN 259681
              David J. Zack, FBN 641685
              COFFEY BURLINGTON, P.L.
              2601 South Bayshore Drive, Penthouse
              Miami, Florida  33133
              Tel.  305-858-2900
              Fax.  305-858-5261

        By:  **/s/ David J. Zack**
              David J. Zack
              kcoffey@burlington.com
              dzack@coffeyburlington.com
              vmontejo@coffeyburlington.com
              service@coffeyburlington.com
              *Counsel for Young Conaway*
                *Stargatt & Taylor, LLP and*
              *Bruce L. Silverstein, Esq.*

01:16029345.6

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on September 25, 2014, on all counsel or parties of record on the Service List below.

By:   /s/David J. Zack

01:16029345.6

**SERVICE LIST**

*JTR Enterpises, LLC vs. An Unknown Quantity, etc., vs. Motivation, Inc.*
*Case No. 4:11-cv-10074-JLK*

JTR Enterprises, LLC
c/o 608 Whitehead Street
Key West, FL  33040
*Pro Se*

Hugh J. Morgan
Law Office of Hugh J. Morgan
317 Whitehead Street
P.O. Box 1117
Key West, FL  33041
Tel. (305) 296-5676
hugh@hjmorganlaw.com
*Counsel for Motivation, Inc.*

John Edward Tuthill
The Law Office of John E. Tuthill
3300 49th Street North
St. Petersburg, FL  33710
*Counsel for Motivation, Inc.*

John E. Holloway
Troutman Sanders, LLP
222 Central Park Avenue #2000
Virginia Beach, VA  23462
Tel.  (757) 687-7500
john.holloway@troutmansanders.com
*Counsel for Motivation, Inc.*

Arthur Eugene Lewis, Jr.
Lewis & White, P.L.C.
222 W. Georgia Street
P.O. Drawer 1050
Tallahassee, FL  32301-1050
Tel.  (850) 425-5000
Fax  (850) 425-5004
lawlaw@polaris.net
*Counsel for Motivation, Inc.*

Marlow V. White, Jr.
Lewis & White
222 W. Georgia Street
Tallahassee, FL  32301-1139
*Counsel for Motivation, Inc.*

John Gravante, III
Podhurst Orseck, P.A.
25 West Flagler Street
Suite 800
Miami, FL  33130
Tel. (305) 358-2800
Fax (305) 358-2382
jgravante@podhurst.com
*Counsel for Material Witness
Paul D. Sullivan*

01:16029345.6